UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PETER BOZIER,                                    :

              Plaintiff,      :    Civil Action
                                  No. _____
  v.                                              :

NEIL MCGONAGLE, CHRISTOPHER ELLIS, :       **JURY TRIAL DEMANDED**
SEAN JORDAN, CHRISTOPHER BUCKLEY,
WILLIAM MILLER, WILLIAM LUGO, and  :
LENOX JANGA,
                                   :
              Defendants.
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff Peter Bozier ("Bozier"), by and through his undersigned counsel, alleges upon knowledge with respect to himself and his own acts, and upon information and belief concerning all other matters, as follows:

### NATURE OF ACTION

1. Mr. Bozier is a former detainee at Suffolk County Jail in Boston, Massachusetts ("Suffolk Jail") who suffered serious physical and emotional injury when correctional staff at Suffolk Jail violently and without justification assaulted him -- while Mr. Bozier was physically restrained and did not present any physical threat to the officers -- multiple times over the course of a single afternoon, causing injuries to his chest and face, including a fractured eye socket and hours of untreated pain and suffering.

2. This prolonged series of assaults -- which were, in part, captured on video surveillance -- were objectively unreasonable, not justified under the circumstances, not

rationally related to a legitimate governmental objective, and violated Mr. Bozier's Fourteenth Amendment rights.

3. Defendants used force purposely or knowingly against Mr. Bozier that was objectively unreasonable in violation of his constitutional rights, and therefore through their own inactions and omissions caused the violation of Mr. Bozier's constitutional rights.

4. This action is brought under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, M.G.L. c. 12 § 11(I) and the common law.

## THE PARTIES

5. Plaintiff Peter Bozier is a resident of the Commonwealth of Massachusetts.  Mr. Bozier was, at all times relevant to this action, a prisoner at the Suffolk County Jail in Boston, Massachusetts located at 200 Nashua Street, Boston, Massachusetts 02114.  At the time of the assaults, Mr. Bozier, then 23 years old, was being held at Suffolk Jail awaiting trial.  At all times relevant to this action, Mr. Bozier was being held as a pre-trial detainee at Suffolk Jail.  At present, however, Mr. Bozier resides at the South Bay House of Correction, 20 Bradston Street, Boston, Massachusetts  02118.

6. Defendant Christopher Buckley was, at all times relevant to this action, a Sergeant at Suffolk Jail.  He was responsible for the lawful care and custody of prisoners committed to Suffolk Jail.  His regular place of business is or was at Suffolk Jail, 200 Nashua Street, Boston, Massachusetts  02114.

7. Defendant Neil McGonagle was, at all times relevant to this action, a Captain at Suffolk Jail.  He was responsible for the lawful care and custody of prisoners committed to Suffolk Jail.  His regular place of business is or was at Suffolk Jail, 200 Nashua Street, Boston, Massachusetts  02114.

8. Defendant Christopher Ellis was, at all times relevant to this action, an Officer at Suffolk Jail. He was responsible for the lawful care and custody of prisoners committed to Suffolk Jail. His regular place of business is or was at Suffolk Jail, 200 Nashua Street, Boston, Massachusetts 02114.

9. Defendant William Lugo was, at all times relevant to this action, an Officer at Suffolk Jail. He was responsible for the lawful care and custody of prisoners committed to Suffolk Jail. His regular place of business is or was at Suffolk Jail, 200 Nashua Street, Boston, Massachusetts 02114.

10. Defendant Lenox Janga was, at all times relevant to this action, an Officer at Suffolk Jail. He was responsible for the lawful care and custody of prisoners committed to Suffolk Jail. His regular place of business is or was at Suffolk Jail, 200 Nashua Street, Boston, Massachusetts 02114.

11. Defendant William Miller was, at all times relevant to this action, an Officer at Suffolk Jail. He was responsible for the lawful care and custody of prisoners committed to Suffolk Jail. His regular place of business is or was at Suffolk Jail, 200 Nashua Street, Boston, Massachusetts 02114.

12. Defendant Sean Jordan was, at all times relevant to this action, an Officer at Suffolk Jail. He was responsible for the lawful care and custody of prisoners committed to Suffolk Jail. His regular place of business is or was at Suffolk Jail, 200 Nashua Street, Boston, Massachusetts 02114.

13. Defendants are sued in their individual capacities. At all times relevant to this action, Defendants were acting or failing to act under the color of law.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over claims arising under the laws of Massachusetts pursuant to 28 U.S.C. § 1367 because Mr. Bozier's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

15. Venue is proper in this District because (i) the events giving rise to the claims occurred in the District of Massachusetts; (ii) one or all Defendants reside in this District; or (iii) Defendants are otherwise subject to personal jurisdiction in the District of Massachusetts. *See* 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Officers Miller, Jordan And The Members Of SERT Team I Physically Assault Mr. Bozier While Escorting Him Into His Cell

16. On September 10, 2015, Mr. Bozier was visiting his attorney in the Suffolk Jail's "attorney room." Per policy, Mr. Bozier was physically restrained by both leg irons and handcuffs.

17. Following the meeting, at approximately 1:45 PM, Mr. Bozier was returning to his cell from the attorney room and was accompanied by Deputy William Miller and Deputy Sean Jordan. Due to the speed at which Miller and Jordan were moving, Mr. Bozier experienced pain from the restraints around his ankles, and he asked Miller and Jordan to slow down. Miller and Jordan refused the request.

18. While ascending the stairs in an area referring to as the "61 Unit," Miller placed his hand on Mr. Bozier to direct him up the flight of stairs. After Mr. Bozier slowed down, Miller used his full body weight to take Mr. Bozier down to the ground and Jordan further

secured his legs. Corporal Michael Burk then called for a Sheriff's Emergency Response Team ("SERT Team I") to respond to the stairs, which consisted of Sergeant Christopher Buckley, Captain Neil McGonagle, Deputy Christopher Ellis, Deputy William Lugo, and Deputy Lenox Janga. SERT Team I then escorted Mr. Bozier up the stairs.

19. When they reached the top of the flight of stairs, Ellis kneed Mr. Bozier in the lower body several times. Jordan joined in kneeing Mr. Bozier, apparently following the lead of Ellis. Ellis additionally forcefully placed Mr. Bozier up against the wall that was immediately outside of Mr. Bozier's cell. The other members of SERT Team I did not intervene during the assault, and instead repeatedly yelled for Mr. Bozier to "stop resisting," although Mr. Bozier was *not* resisting. The assault was partially captured on surveillance cameras.

20. Mr. Bozier was next brought to his cell by SERT Team I. Once inside his cell, Mr. Bozier -- who was still in restraints and did not present any physical threat to the officers -- was forced stomach-down onto his bed by SERT Team I, after which the members of SERT Team I repeatedly struck Mr. Bozier in the ribs, legs, and face. At one point, Mr. Bozier was forced onto his back on his bed. At this time, Ellis struck Mr. Bozier's face with a closed fist. Mr. Bozier immediately reacted to this strike, and grabbed his eye in pain. The other members of SERT Team I did not intervene during the assault, and instead repeatedly yelled for Mr. Bozier to "stop resisting" -- although Mr. Bozier was *not* resisting -- and otherwise claimed that Mr. Bozier "liked it." This assault resulted in the fracture of Mr. Bozier's left eye socket and nasal wall. In pain, Mr. Bozier requested the attention of a nurse, but his request was ignored.

21. As the last members of SERT Team I were leaving his cell, Mr. Bozier approached Janga and Buckley to again state that he was in pain and to further request medical treatment. In response, Buckley struck Mr. Bozier in the chest with his palm, causing Mr. Bozier

to fall to the ground in his cell.  At this point, SERT Team I exited Mr. Bozier's cell.  Mr. Bozier remained in his cell, and continued to be restrained -- at McGonagle's order -- by his leg irons and handcuffs.

22. The force exerted by Miller, Jordan, and the SERT Team I onto Mr. Bozier was objectively unreasonable -- including because at the time of their assaults on Mr. Bozier, both his legs and arms were fully restrained.  Defendants applied this force purposefully, knowingly, and maliciously to intentionally cause Mr. Bozier harm, and there was no legitimate penological purpose for physically accosting Mr. Bozier in this manner, nor was it required to preserve internal order or discipline at Suffolk Jail.  Although Miller, Jordan, and the other members of SERT Team I were witnesses to, and in the immediate proximity of, these assaults on Mr. Bozier -- and otherwise had an opportunity to prevent or put a stop to these assaults -- none took a reasonable step to intervene.

### SERT Team II Assaults Mr. Bozier With Chemicals And Unnecessarily Restrains Him During Medical Procedures

23. Following the assault in Mr. Bozier's cell, McGonagle ordered his officers to prepare to engage in a "forced cell move," which would involve, among other things, filming their interactions with Mr. Bozier.  As a result, a second Sheriff's Emergency Response Team ("SERT Team II") was dispatched to Mr. Bozier's cell.  SERT Team II consisted of McGonagle, Janga, Ellis, Buckley, Lugo, and Officer Michael Caprigno.  Officer Scott Bruce served as cameraman to videotape the forced cell move.

24. Following the assault in his cell, Mr. Bozier, in pain and distress, placed a sheet over the window of his cell.  In response, when SERT Team II arrived at Mr. Bozier's cell, McGonagle asked Mr. Bozier to remove the sheet from his window.  When Mr. Bozier did not do so, McGonagle apparently viewed the lack of response as non-compliance, and sprayed a

...

chemical agent through the door of the cell.  McGonagle ordered Mr. Bozier to lie down on the ground, and proceeded to apply the spray three more times.

25. SERT Team II then entered Mr. Bozier's cell and, largely using the force of a shield held by Janga, pinned him to the bed and wall while other officers kneed him and otherwise assaulted him.  Members of SERT Team II thereafter further restrained Mr. Bozier, including by moving his handcuffs to restrain his hands behind his back.  During this assault, Mr. Bozier asserted repeatedly and loudly that he was unable to breathe, to which SERT Team II's sole response was to order Mr. Bozier to "stop resisting."

26. The force exerted by the members of SERT Team II on Mr. Bozier during this "forced cell move" was objectively unreasonable -- including because at the time of their assault on Mr. Bozier, both his legs and arms were fully restrained, and Mr. Bozier was further incapacitated as he had been previously assaulted by SERT Team I and had been subjected to multiple sprays of a chemical agent by McGonagle.  Defendants applied this force purposefully, knowingly, and maliciously to intentionally cause Mr. Bozier harm, and there was no legitimate penological purpose for physically accosting Mr. Bozier in this manner, nor was it required to preserve internal order or discipline at Suffolk Jail.  Although the members of SERT Team II were additionally witnesses to, and in the immediate proximity of, these assaults on Mr. Bozier -- and otherwise had an opportunity to prevent or put a stop to these assaults -- none took a reasonable step to intervene.

27. Mr. Bozier was then moved to the Recreation Deck Area.  Once there, SERT Team II placed Mr. Bozier in a "restraint chair" and said that whether he would remain in the restraint chair was "up to" Mr. Bozier.  Mr. Bozier was agitated, and his eye was visibly swollen from the earlier assault when he was returned to his cell, but he did not physically resist

7

in any way, as shown on the video recorded by SERT Team II. Indeed, that video confirmed the severe injury to Mr. Bozier's left eye, visible in the following picture:



28. Members of SERT Team II thereafter poured water over Mr. Bozier's face several times in an attempt to rinse the chemical agent from his face, and then took him to a medical area to be examined by two nurses while still restrained.

29. At this medical examination, Mr. Bozier was given an echocardiogram ("EKG") and oxygen, all while remaining securely bound to the restraint chair. After the examination, Mr. Bozier was returned to his cell while still strapped in the restraint chair. McGonagle approached Mr. Bozier and asked him if he would comply with the rules of the facility. After stating that he found Mr. Bozier to "seem a little agitated," McGonagle ordered that Mr. Bozier's straps be tightened and stated that he would remain in the restraint chair -- impermissibly as a *punishment* -- in his cell for approximately 10 to 15 minutes, at which time he would be reassessed.

30.     Mr. Bozier was subsequently left in the restrained chair for two hours, whereupon Lieutenant Jay C. McCarthy finally ordered that he be released. Throughout that period he was occasionally checked by a nurse, but his injuries remained untreated.

### The Physical Abuse Of Mr. Bozier Continues And He Is Further Denied Proper Medical Care For His Facial Injuries

31.     After Mr. Bozier's repeated complaints regarding his facial pain, he was attended to by a nurse. After examining his eyes, the nurse stated that Mr. Bozier should be taken to a doctor. At this time the officers ceased filming Mr. Bozier, and he was taken to a staff doctor.

32.     During his doctor's visit, Mr. Bozier requested that he be taken to a hospital. The staff doctor, however, refused to tell Mr. Bozier whether he would be taken to a hospital. He was thereupon returned to his cell, but was told that he would be taken to the hospital.

33.     While walking to his cell, Mr. Bozier -- who by this point had been restrained for several hours, beaten, and sprayed repeatedly with chemical agents -- asked to be allowed to take a shower. McCarthy denied Mr. Bozier's request for a shower and, because Mr. Bozier purportedly "tensed" at that response, had Mr. Bozier taken to the ground. When Mr. Bozier was brought back to his feet, the officers began to walk him backwards toward his cell (referred to as "reverse double nine-ing" a detainee). Mr. Bozier verbally objected to this practice, which resulted in him being brought to the ground a second time. At this point the officers began filming Mr. Bozier again. During this encounter, the officers pinned Mr. Bozier on the ground against his will. Although upset at his treatment, Mr. Bozier can be clearly heard on video agreeing to be escorted by McCarthy and that he was "good." Mr. Bozier was nevertheless made to continue walking backwards towards his cell.

**Mr. Bozier Finally Receives Treatment
For The Medical Injuries He Suffered At The Hands
Of Suffolk Jail Staff, Eight Hours After The Assaults Occurred**

34.     Despite Mr. Bozier's cooperation with the officers, the order to send him to the hospital was rescinded after the incident en route to his cell.  Mr. Bozier was once again returned to his cell, where he waited for nearly another four hours before finally being sent to the Massachusetts Eye and Ear Infirmary, where he was diagnosed with nicrohyphema (microscopic bleeding into the anterior chamber of the eye) in his left eye, as well as fractures to his left orbital color and nasal wall, and infraorbital nerve damage.  Mr. Bozier was subsequently referred to an ophthalmic plastic surgeon for those injuries.  While at the treatment facility, Mr. Bozier further complained of severe pain in his face and chest, and reiterated that he had experienced difficulty breathing throughout the earlier assaults.  Notwithstanding the treatment he received, Mr. Bozier continues to suffer from his injuries to this day.

35.     In addition to the physical pain and discomfort described above, Mr. Bozier developed fear and anxiety about the prison and guards based upon the assaults and surrounding incidents.

**Mr. Bozier Timely Grieved The Misconduct
Of The Officers, But Was Incorrectly Denied Any Relief**

36.     Understandably, following the unjustified attacks on his person on September 10, 2015, Mr. Bozier timely filed a grievance form with the Suffolk County Sheriff's Department on September 14, 2015.  That grievance was referred to the Suffolk County Sheriff's Investigative Division ("SID"), which ultimately issued a memorandum on March 3, 2016 that concluded -- including because of conflicting and biased reports of the present officers -- that the treatment of Mr. Bozier was somehow "reasonable, necessary, and suitable to the confrontation." For the reasons discussed above, that conclusion was misguided and incorrect.

37.     In any event, as a result of Mr. Bozier's grievance and the resulting referral of that grievance to SID, Mr. Bozier has exhausted all administrative remedies available to him, thus necessitating the present action.

### COUNT I
### Violations Under 42 U.S.C. § 1983
### (Excessive Force by Defendants Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller)

38.     Mr. Bozier repeats and realleges the preceding paragraphs as if fully set forth herein.

39.     Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller used excessive and unnecessary force against Mr. Bozier in violation of his right to due process under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

40.     Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's use of force was purposeful and knowing, and was not objectively reasonable from the viewpoint of a reasonable officer in the same or similar circumstances, including because Mr. Bozier was physically restrained and did not present any physical threat to the officers.

41.     As a direct and proximate result of Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's actions, Mr. Bozier suffered injuries as described above.

### COUNT II
### Violations Under 42 U.S.C. § 1983
### (Failure to Intervene by Defendants Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller)

42.     Mr. Bozier repeats and realleges the preceding paragraphs as if fully set forth herein.

43.     Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller failed to intervene in the use of excessive and unnecessary force against Mr. Bozier in violation of his

right to due process under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

44. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller were in the proximity of the assaults on Mr. Bozier, described above, and were witnesses to these attacks.

45. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller had reasonable opportunities to prevent or put a stop to the attacks on Mr. Bozier; however, they failed to take reasonable steps to intervene upon witnessing other correctional officers using excessive force against Mr. Bozier.

46. As a direct and proximate result of Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's actions, Mr. Bozier suffered injuries as described above.

## COUNT III
### Violations Under M.G.L. c. 12 §11(I)
### (Excessive Force by Defendants Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller)

47. Mr. Bozier repeats and realleges the preceding paragraphs as if fully set forth herein.

48. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller, through threats, intimidation, and coercion, interfered with Mr. Bozier's right to due process under the Constitution of Massachusetts and the Massachusetts Declaration of Rights.

49. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's conduct constitutes excessive and unnecessary use of force and cruel or unusual punishment in violation of Article Twenty-Six of the Declaration of Rights of the Massachusetts Constitution.

50. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's use of force was malicious and sadistic for the purpose of causing harm, and not for any legitimate safety or

penological purpose. Further, their use of force was purposeful and knowing, and was not objectively reasonable.

51. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's use of force was coercive, using physical force to constrain Mr. Bozier into acting against his will.

52. As a direct and proximate cause of Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's actions, Mr. Bozier suffered injuries as described above.

## COUNT IV
## Assault And Battery
**(Against Defendants Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller)**

53. Mr. Bozier repeats and realleges the preceding paragraphs as if fully set forth herein.

54. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller committed an assault and battery on Mr. Bozier by using intentional and unjustified excessive force against him, causing the injuries described above.

## COUNT V
## Intentional Infliction Of Emotional Distress
**(Against Defendants Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller)**

55. Mr. Bozier repeats and realleges the preceding paragraphs as if fully set forth herein.

56. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller acted with intent to cause Mr. Bozier emotional stress, including ensuring that he would not enter into future verbal altercations with them or disobey any future orders.

57. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's excessive physical assaults on Mr. Bozier were outrageous conduct and beyond the bounds of civilized decency. Further, Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's failure to

intervene in the assaults and abuse of Mr. Bozier was outrageous conduct beyond the bounds of civilized decency.

58. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller's actions proximately caused Mr. Bozier to suffer severe emotional distress.

59. Buckley, Ellis, Jordan, Janga, Lugo, McGonagle, and Miller knew, or should have known, that their actions would cause severe emotional distress to Mr. Bozier as a result of the physical injuries Mr. Bozier sustained.

## JURY TRIAL DEMAND

Mr. Bozier demands a jury trial on all triable claims.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Bozier respectfully requests that this Court:

A. Enter judgment for Mr. Bozier on all of his claims;

B. Award Mr. Bozier compensatory damages in an amount to be determined at trial;

C. Award Mr. Bozier punitive damages in an amount to be determined at trial;

D. Award Mr. Bozier his reasonable costs and attorneys' fees and expenses incurred in connection with this action;

E. Award Mr. Bozier prejudgment interest; and

F. Award such other and further relief as this Court deems just and proper.

Dated: September 7, 2018
Boston, Massachusetts

Respectfully submitted,

/s/ Emily M. Jennings
Emily M. Jennings (BBO #691652)
Nathaniel Adams (BBO #682536)
500 Boylston Street, 23rd Floor
Boston, Massachusetts 02116
(617) 573-4800
emily.jennings@skadden.com
nathaniel.adams@skadden.com

Counsel for Plaintiff
Peter Bozier